**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| **WEBSTER & ASSOCIATES, INC.,** | : | Action No.: 12-206-WOB-JGW |
| Plaintiff, | : | (Judge William O. Bertelsman) |
| v. | : | MEMORANDUM OPINION AND ORDER |
| **EAGLEBURGMANN KE, INC.,** | : | |
| Defendant. | : | |

This matter is before the Court on the parties' briefs concerning damages (Doc. 46, Def. Brief; Doc. 52, Pl. Brief) and on Plaintiff's Motion to Modify the Court's November 27, 2013 Order (Doc. 51, Motion to Modify).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of the matter. The Court therefore issues the following Memorandum Opinion and Order.

### ABBREVIATED FACTS

**A. Background Information**

The focus of this litigation is a contract that was entered into on November 1, 2009 (the "Contract") between the parties, Plaintiff Webster & Associates ("Webster") and Defendant EagleBurgmann KE, Inc. ("Defendant"). (*See* Doc. 32, Webster Dep., p.p. 42, 99-100, Exs. F and C; Green Dec., ¶3 and Ex. 1.)

Under the Contract, Webster was granted the exclusive obligation and right to solicit for the sale of equipment on behalf of Burgmann to a defined market territory in the Southeast. (Webster Dep., Ex. C., Appx. II.) In exchange for his services, Webster received commissions as determined by Appendix I to the Contract. (*Id.*, Ex. C at Appx. I.)

The Contract states that in the event of termination of the Contract by Burgmann, Webster "will receive commission for any orders accepted by the PRINCIPAL, for the remaining period of the contract." (*Id.* at Section 10.) The relevant duration and Contract termination provisions under Section 11 of the Contract state:

> **Section 11. DURATION OF AGREEMENT**
>
> This Agreement shall be a three (3) year "evergreen" contract, meaning the Agreement shall automatically be extended by one (1) year at the end of each contract year, unless either party shall have given written notice of its intention not to renew the Agreement at least sixty (60) days prior to the expiration of the then current year of the agreement.
>
> Should the PRINCIPAL serve notice of intention to terminate the agreement, REPRESENTATIVE may be required to service ACCOUNTS in the Territory for the remaining two years of this agreement, at the PRINCIPAL's option. PRINCIPAL's decision to relieve the REPRESENTATIVE of this responsibility does not affect payment of commissions for any shipments that occur during the remaining two years of the agreement.
>
> Upon a breach of any of the terms and conditions of this Agreement, or any act of misfeasance by

> either party, or should either party become involved in insolvency proceedings, receivership or bankruptcy, this Agreement may be terminated immediately at the option of the other party by written notice.

(*Id*. at Section 11.)

The contractual relationship operated smoothly until Spring 2011, when Webster was unavailable to Burgmann and neglected his duties under the Contract. (*See* Doc. 30 at p. 6; Richard Webster Affidavit at ¶ 14; Webster Depo. at 65-66, 70.) After multiple attempts to reach Webster without response, Burgmann mailed Webster a termination letter on September 14, 2011. (*See* Webster Depo. at Ex. D.)

**B. The Court's November 27, 2013 Order**

This action was commenced on October 9, 2012. (See Doc. 1.) On November 27, 2013, the Court granted partial summary judgment for Defendant on its contract counterclaim, but denied summary judgment as to Webster's contract claim. (Doc. 44, Order, 12.) Because the Contract extended until November 1, 2013 due to the evergreen provision, the Court ruled Webster is entitled to receive commissions under the Contract up to and including November 1, 2013. (*Id*.) The Court also ruled that Burgmann is entitled to establish its damages due to Webster's breach. (*Id*. at 11.)

3

**LEGAL CONCLUSIONS**

**A. Plaintiff's Motion to Modify is Denied.**

Plaintiff's Motion to Modify the Court's November 27, 2013 Order is not well-taken and is denied.

The Court's Order interpreted the Contract termination provision to mean that the Contract ran from November 1, 2009 until November 1, 2012. When the Contract reached the end of the first contract year on November 1, 2010, the Contract extended by one year to November 1, 2013. The fact that Burgmann failed to provide sixty-days' notice prior to the expiration of the then current year of the agreement was irrelevant, because the Contract provides that Burgmann "may terminate the contract immediately" due to Webster's breach. (*See* Doc. 44, Order, page 12.)

The Court found that because the Contract was terminated due to Plaintiff's breach on September 14, 2011, the Contract did not yet renew "at the end of the contract year" (on November 1, 2011). Rather, because Defendant terminated the Contract due to Plaintiff's breach, the Contract immediately terminated, though the obligation to pay the remaining two years of commissions remained. Thus, Burgmann owes payment on commissions through November 1, 2013, not November 1, 2014.

Plaintiff's suggestion that Defendant's drafting the Order is a basis for it to be modified is not well-taken. The record

4

is clear that Plaintiff was given the opportunity to review the Order before Defendant submitted the draft Order to the Court. (Doc. 47, Hearing Transcript, page 25.)  There is no evidence that Defendant failed to show the proposed order to Plaintiff or that Plaintiff raised any objections prior to submission of the Order to the Court.

**B. Defendant is Entitled to Judgment Against Plaintiff in the Amount of $93,227.22.**

The Court adopts Defendant's calculation of damages, which amounts are reasonable and not challenged by Plaintiff. Defendant incurred $336,628.00 in damages to replace Plaintiff. Plaintiff is owed $243,400.78 in commissions, which is not disputed but for his argument that the Contract period should be extended.  Therefore, judgment will be entered in favor of Defendant for $93,227.22.

"In seeking to state the exact formula for measuring contract damages, the courts may use different techniques depending on the type of contract involved." KY. L. OF DAMAGES, §18.1 (2014 ed.)  "In failure to provide some personal service, the damages are usually measured as the cost of obtaining the service less the amount the breaching party would have been paid." *Id. (*citing *Haas v. Gahlinger,* 248 S.W.2d 349, 352 (Ky. 1952); *Hogg v. Edley*, 236 Ky. 142, 32 S.W.2d 744, 746 (1930)). Lost profits are recoverable in most cases if they were in the

5

contemplation of the parties and reasonably certain to occur. KY. L. OF DAMAGES, §18.1 (2014 ed.) (citing *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401, 55 A.L.R.4th 499 (Ky. 1985)).

Defendant hired Mr. Viau to replace Plaintiff to mitigate its damages, incurring total of $336,628.00 in salary, commissions, benefits and transportation expenses. The Court rejects Plaintiff's argument that Defendant's damages are unreasonable because Mr. Viau is a salaried employee entitled to benefits and expense reimbursement. Mr. Viau works in the same market and territory and performs the same job functions as did Webster. In addition, Mr. Viau is paid fairly comparably to what Plaintiff was paid in commissions. Under the Contract, Webster would have received commissions of $243,400.78, whereas Mr. Viau's total earnings plus benefits and transportation expenses equal $336,628.00.

Defendant's expenses would not have been incurred but for Webster's breach of the Contract. Moreover, Defendants are not seeking lost profits, to which they are arguably entitled under the law. Accordingly, Defendant is entitled to a judgment against Webster in the amount of $93,227.22.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Modify the Court's Order is **DENIED**; and judgment in the amount of **$93,227.22** is entered in favor of Defendant.

This 3rd day of April, 2014.



Signed By:
*William O. Bertelsman* WOB
United States District Judge